**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHIHULY, INC., | |
|        Plaintiff, | No.   18-cv-6365 |
| v. | |
| ECHT GALLERY CHICAGO, LLC, ECHT GALLERY INC., KAREN ECHT, | |
|        Defendants. | |

## COMPLAINT

Plaintiff Chihuly, Inc. ("Chihuly" or "Plaintiff"), by and through its undersigned counsel at Perkins Coie, LLP, hereby asserts its complaint against Defendants Echt Gallery Chicago, LLC ("EGC"), Echt Gallery, Inc. ("EG") and Karen Echt ("Echt" and together with EGC and EG, "Defendants").

## INTRODUCTION TO CLAIMS

1.      Dale Chihuly is a world-renowned artist known for his unique artwork, glass sculptures and environmental installations. Mr. Chihuly operates his art business through his company, Chihuly. Chihuly exhibits and sells Mr. Chihuly's artwork through, among other things, relationships with fine art galleries around the world. These gallery relationships are governed by various contractual agreement that establish terms under which a gallery may exhibit and sell Chihuly artwork. One of the galleries Chihuly agreed to work with is the Echt Gallery, located in Chicago, which is owned and controlled by Echt through corporate entities EG and EGC.

2.      Defendants Echt, EG, and EGC have repeatedly breached their obligations to Chihuly by selling Chihuly artwork, collecting payments from clients, and pocketing those payments instead of remitting them to Chihuly as required under the respective contractual agreements with Chihuly. Notwithstanding Defendants' blatant disregard for their obligations to immediately transmit the sales proceeds to Chihuly, Chihuly agreed to finance the amounts owed

by Defendants through several promissory notes executed by Defendants and secured by all the assets of EGC.

3.      Despite Chihuly's patience, Defendants defaulted on their obligations to make the monthly payments due to Chihuly under the secured promissory notes.  Chihuly then discovered that Defendants were using Chihuly's copyrighted images in its marketing materials without authorization, also in violation of its agreements with Chihuly, and had fraudulently misrepresented the sale of two additional pieces of Chihuly artwork by again accepting payments from clients, concealing those payments from Chihuly and misrepresenting the status of the orders to both Chihuly and its clients, all in further breach of Defendants' agreements with Chihuly.

4.      Defendants' unlawful actions have caused Chihuly to suffer hundreds of thousands of dollars in damages.  Chihuly seeks recover of these losses as well as statutory damages, punitive damages, and attorneys' fees and costs.

## PARTIES

5.      Plaintiff Chihuly is a corporation organized under the laws of the State of Washington, with its principal place of business in Seattle, Washington.  Chihuly is the successor by merger of Chihuly Workshop, Inc.  Chihuly is in the business of creating, exhibiting and selling works of fine art created by renowned artist and glass sculptor Dale Chihuly and his artistic team.

6.      Defendant Echt Gallery Chicago, LLC is a limited liability company organized under the laws of the State of Illinois with a principal place of business in Chicago, Illinois.  EGC's manager and member is Karen Echt.  Upon information and belief, all members and/or owners of EGC are citizens of Illinois.

7.      Defendant Echt Gallery Inc. is a corporation organized under the laws of the State of Illinois with a principal place of business in Chicago, Illinois.  EG's President, Secretary, and Registered Agent is Karen Echt.  Upon information and belief, EG is not in good standing with the Illinois Secretary of State.

8.      Defendant Karen Echt is an individual who, upon information and belief, resides in and is domiciled in Highland Park, Illinois.

## JURISDICTION AND VENUE

9.      Because Chihuly is a citizen of the State of Washington and Defendants are all citizens of the State of Illinois, there is complete diversity of citizenship between the parties.

10.     As is explained in detail below, the amount in controversy in this case greatly exceeds $75,000, exclusive of interests and costs.

11.     Accordingly, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

12.     This Court also has exclusive subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a) because it concerns a claim relating to copyrights.

13.     This Court has general personal jurisdiction over Echt because she is a citizen of and domiciled in the State of Illinois.

14.     This Court has general personal jurisdiction over EGC and EG because they have their principal places of business in, are citizens of, and carry on a continuous and systematic business in the State of Illinois, such that they should reasonably expect to be sued in court within the State of Illinois.

15.     This Court also has specific personal jurisdiction over each of the Defendants because these claims arise out of sufficient minimum contacts with the State of Illinois, including sales to Illinois customers.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claim occurred in this district.

## FACTS

**I.      Chihuly is a world-renowned artist and glass sculptor.**

17.     Starting in 1971, Dale Chihuly led the development of glass blowing as a fine art.

18.     Over the past four decades, Mr. Chihuly has established himself as a world-class artist known for his artwork, intricate glass sculptures and environmental art exhibitions,

including exhibitions in Jerusalem, London, Montreal, San Francisco, Boston, Seattle and Chicago.

19. Mr. Chihuly's artwork is included in more than 200 museum collections around the world and Mr. Chihuly has received numerous awards, including 12 honorary doctorates and two fellowships from the National Endowment for the Arts.

20. In 1985, Mr. Chihuly established Chihuly, a Washington corporation, through which Mr. Chihuly operates his art business and sells his original artwork. In 1993, Mr. Chihuly established Portland Press, Inc. ("Portland Press"), another Washington corporation, through which Chihuly published several books regarding Mr. Chihuly and his artwork, and sold edition artwork, which involves the production of several "editions" of a specific piece of artwork.

21. In 2012, Portland Press changed its name to Chihuly Workshop, Inc. ("Chihuly Workshop"). In January 2018, Chihuly Workshop merged into Chihuly, with Chihuly as the sole surviving corporation through which Mr. Chihuly now operates his entire art business.

22. One way through which Chihuly sells Mr. Chihuly's artwork is by entering into individual agreements with fine art galleries around the world. These agreements can take several forms, from gallery consignment agreements that permit the gallery to exhibit and sell Chihuly artwork on consignment, to independent referral agreements that permit a gallery to sell Chihuly artwork by referring clients directly to Chihuly. All of these agreements contain strict requirements regarding the gallery's use of Chihuly copyrighted art, trademarks and trade names as well as conditions for the sale, delivery, installation and payment for Chihuly artwork.

**II. Chihuly agrees to sell artwork through Echt Gallery in Chicago.**

23. One of the galleries that Chihuly agreed to work was the Echt Gallery, which was located at 222 West Superior Street in downtown Chicago, Illinois.

24. Echt Gallery is owned and controlled by Echt through various corporate entities, including EG and EGC.

25. Echt is the President, Secretary and Registered Agent of EG, which is currently not in good standing with the Illinois Secretary of State. A true and correct copy of the Illinois

Secretary of State filings for EG is attached hereto as Exhibit A and incorporated herein by reference.

26.  Echt is also the Member and Manager of EGC, which previously operated under the name Habatat Galleries Chicago, LLC.  A true and correct copy of the Illinois Secretary of State filings for EGC is attached hereto as Exhibit B and incorporated herein by reference.

27.  Upon information and belief, EGC does not conduct regular meetings of members or managers to discuss the business of Echt Gallery.

28.  Upon information and belief, EG does not conduct regular meetings of the board of directors to discuss the business of Echt Gallery.

29.  Upon information and belief, Echt comingles her personal finances with the corporate finances of EGC and EG.

30.  Echt uses her personal email addresses echtkaren@mac.com and echtkaren@me.com and her personal mobile phone to conduct business on behalf of Echt Gallery.

31.  On or about January 9, 2018, Echt Gallery instructed Chihuly to change the address for the Echt Gallery to 210 West Superior Street, Chicago, IL 60654.

**III.  Echt Gallery sells Chihuly artwork but refuses to remit payment for the sale to Chihuly, resulting in the accrual of a significant debt to Chihuly.**

32.  Echt Gallery sold Chihuly artwork to clients and accepted payment in full for the artwork but refused to remit those payments to Chihuly, as required under its agreement with Chihuly.  As a result, Echt Gallery became indebted to Chihuly in the amount of $187,000.00.

33.  On February 20, 2013, Echt and Echt Gallery, LLC, each as makers, executed a Promissory Note in favor of Chihuly, as holder, in the principal sum of $187,000.00 plus interest at the rate of 8% per annum (the "2013 Note"), through which both Echt Gallery and Echt personally were obligated to repay the outstanding indebtedness with interest to Chihuly over a four-year period.  A true and correct copy of the 2013 Note is attached hereto as Exhibit C and incorporated herein by reference.

34.     The 2013 Note incorrectly lists Echt Gallery, LLC, which is not a corporate entity registered with the Illinois Secretary of State, instead of EGC, an Illinois limited liability company registered with the Illinois Secretary of State that Echt and Chihuly intended to be obligated under the 2013 Note.

35.     The 2013 Note was secured by all property of Echt Gallery pursuant to a Security Agreement between Echt Gallery, LLC[1] and Chihuly dated February 20, 2013 (the "2013 Security Agreement").  A true and correct copy of the 2013 Security Agreement is attached hereto as Exhibit D and incorporated herein by reference.

36.     Chihuly perfected its security interest in all property of EGC by filing a UCC-1 Financing Statement with the Illinois Secretary of State (as amended and continued, the "Financing Statement").  A true and correct copy of the Financing Statement is attached hereto as Exhibit E and incorporated herein by reference.

37.     On May 1, 2016, Echt Gallery, LLC[2] and Echt, as makers, each executed a new Promissory Note in favor of Chihuly, as holder, in the principal sum of $101,859.21 plus interest at the rate of 8% per annum (the "First 2016 Note"), which replaced and superseded the 2013 Note.  A true and correct copy of the First 2016 Note is attached hereto as Exhibit F and incorporated herein by reference.

38.     The First 2016 Note required Echt Gallery and Echt to make monthly payments of principal and interest totaling $1,000 with a balloon payment due June 20, 2019.  The First 2016 Note also provided for, among other things, default interest of 12%, acceleration of all amounts due and owing upon an event of default that is not cured within 30 days after written notice, and the payment of all costs incurred by Chihuly in collecting any amounts due under the First 2016 Note, including reasonable attorneys' fees. *See* First 2016 Note ¶¶ 2, 6, 7.

---

[1] The parties again incorrectly listed Echt Gallery, LLC in the 2013 Security Agreement instead of EGC as the parties intended.
[2] The parties again listed Echt Gallery, LLC as the maker in the First 2016 Note instead of EGC as the parties intended.

39.     On May 1, 2016, Echt Gallery, LLC[3] and Echt, each as makers, executed a second Promissory Note in favor of Chihuly, as holder, in the principal sum of $109,296.25 plus interest at the rate of 8% per annum (the "Second 2016 Note").  A true and correct copy of the Second 2016 Note is attached hereto as Exhibit G and incorporated herein by reference.

40.     The Second 2016 Note required Echt Gallery and Echt to make monthly payments of principal and interest totaling $1,000 with a balloon payment due June 20, 2019.  The Second 2016 Note also provided for, among other things, default interest of 12%, acceleration of all amounts due and owing upon an event of default that is not cured within 30 days after written notice, and the payment of all costs incurred by Chihuly in collecting any amounts due under the Second 2016 Note, including reasonable attorneys' fees.  *See* Second 2016 Note ¶¶ 2, 6, 7.

41.     On May 1, 2016, Echt Gallery, LLC[4] and Echt, each as makers, executed a third Promissory Note in favor of Chihuly Workshop, as holder, in the principal sum of $20,449.60 plus interest at the rate of 8% per annum (the "Third 2016 Note" and together with the First 2016 Note and Second 2016 Note, the "2016 Notes").  A true and correct copy of the Third 2016 Note is attached hereto as Exhibit H and incorporated herein by reference.

42.     The Third 2016 Note required Echt Gallery and Echt to make monthly payments of principal and interest totaling $500 with a balloon payment due June 20, 2019.  The Third 2016 Note also provided for, among other things, default interest of 12%, acceleration of all amounts due and owing upon an event of default that is not cured within 30 days after written notice, and the payment of all costs incurred by Chihuly in collecting any amounts due under the Second 2016 Note, including reasonable attorneys' fees.  *See* Third 2016 Note ¶¶ 2, 6, 7.

43.     The 2016 Notes were secured by all property of Echt Gallery pursuant to the Security Agreement dated May 31, 2016 between Echt Gallery, LLC,[5] as the debtor, and Chihuly

---

[3] The parties incorrectly listed Echt Gallery, LLC as the maker in the Second 2016 Note instead of EGC as the parties intended.
[4] The parties incorrectly listed Echt Gallery, LLC as the maker of the Third 2016 Note instead of EGC as the parties intended.
[5] The parties incorrectly listed Echt Gallery, LLC in the 2016 Security Agreement instead of EGC as the parties intended.

Workshop, as the secured party (the "2016 Security Agreement"). A true and correct copy of the 2016 Security Agreement is attached hereto as Exhibit I and incorporated herein by reference.

44.     The 2016 Security Agreement secures the Obligations, which is defined as:

> "Obligations" shall include all debts, liabilities, obligations, covenants and duties owing from the Debtor to the Secured Party of any kind or nature, present or future (including any interest accruing thereon after maturity, or after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding relating to the Debtor, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), whether evidenced by or arising under the Note or this Agreement or, whether absolute or contingent, joint or several, due or to become due, now existing or hereafter arising, and all costs and expenses of the Secured party incurred in the enforcement, collection or otherwise in connection with any of the foregoing, including reasonable attorneys' fees and expenses.

45.     Chihuly Workshop's security interest in all property of Echt Gallery pursuant to the 2016 Security Agreement was perfected by the filing, amendment and continuation of the Financing Statements.

**IV.     Echt makes fraudulent misrepresentations to Chihuly and its clients regarding the sale, delivery and installation of Chihuly artwork.**

46.     On May 31, 2016, Chihuly entered into an Independent Referral Agreement with Echt Gallery, LLC[6] (the "2016 Referral Agreement"), which permitted Echt Gallery to act as a non-exclusive independent referral agent for the limited purpose of referring sales of Chihuly artwork to clients identified by Echt Gallery. A true and correct copy of the 2016 Referral Agreement is attached hereto as Exhibit J and incorporated herein by reference.

**A.     2016 Amber Jade Herons Purchase and Installation**

47.     Pursuant to the 2016 Referral Agreement, Echt Gallery identified potential clients interested in acquiring Chihuly artwork.

---

[6] The parties incorrectly listed Echt Gallery, LLC in the 2016 Referral Agreement instead of EGC as the parties intended.

48.     On August 19, 2016, Chihuly entered into the Chihuly Artwork Purchase and Installation Agreement with Echt Gallery, LLC[7] (the "Purchase Agreement") for the purchase and installation of Chihuly artwork titled "Amber Jade Herons" for a client.  A true and correct copy of the Purchase Agreement is attached hereto as <u>Exhibit K</u> and incorporated herein by reference.

49.     The Purchase Agreement, among other things, established a purchase price of $75,000 for the Amber Jade Herons artwork to be paid by the client to Echt Gallery and required Echt Gallery to install the artwork at the client's residence.  Purchase Agreement § 3.2.

50.     The Purchase Agreement required Echt Gallery to pay a total of $60,000[8] to Chihuly in two installments: the first installment of $30,000 due upon signing the Purchase Agreement, and the second installment of $30,000 due "upon substantial completion of the installation of the Artwork at the Site."  *Id*. § 3.4.

51.     Upon information and belief, on or around August 19, 2016, the client paid Echt Gallery the full $75,000 purchase price for the artwork.

52.     On or about August 19, 2016, Echt Gallery paid Chihuly the first installment of $30,000.

53.     Echt Gallery did not pay Chihuly for the second installment of $30,000 required under the Purchase Agreement.

54.     When Chihuly inquired about the timing for the installation of the artwork and payment of the second $30,000 installment, Echt fraudulently misrepresented to Chihuly that the artwork had not been installed, and therefore the second $30,000 installment was not due under the Purchase Agreement

---

[7] The parties incorrectly listed Echt Gallery, LLC in the Purchase and Installation Agreement instead of EGC as the parties intended.
[8] The difference between the $75,000 purchase price and $60,000 payment to Chihuly reflects a $15,000 commission to the Echt Gallery for facilitating the sale.

55.     On September 27, 2016, Chihuly emailed an invoice to Echt reflecting the balance due and owing to Chihuly for the sale of the Amber Jade Herons artwork, which included the second $30,000 installment and $863 shipping cost.

56.     On September 30, 2016, Echt responded by email asking Chihuly to "verify that the balance is due upon installation of Artwork at the site" and confirming that Echt had already invoiced the client for the sale of the artwork.

57.     On October 4, 2016, Chihuly emailed Echt to "confirm date of installation with client, so we can assess shipping timing."

58.     On October 18, 2016, Echt confirmed by email to Chihuly that the artwork should be "shipped this week or early next" and that "[i]nstall is scheduled first week of December."

59.     Chihuly followed Echt's instruction and shipped the Amber Jade Herons artwork to the Echt Gallery on October 19, 2016.

60.     On November 19, 2016, Echt emailed Chihuly to confirm "I am getting ready to install the Fiori shelf in their Florida home around the holidays this year."

61.     Upon information and belief, Echt substantially completed the installation of the Amber Jade Herons artwork in or about December 2016.

62.     Echt intentionally concealed the installation of the Amber Jade Herons artwork to avoid her obligation to remit payment of $30,863 to Chihuly as required under the Purchase Agreement.

63.     When Chihuly followed up with Echt to confirm that the installation had been substantially completed in December 2016, as Echt had promised, Echt intentionally and repeatedly lied to Chihuly saying that the installation had been delayed.

64.     First, Echt told Chihuly that the installation had been delayed until January 28, 2017.

65.     Then, on February 18, 2017, Echt told Chihuly that the installation date had been delayed again until April 7-10, 2017.

66.     On April 15, 2017, Echt told Chihuly the installation was delayed yet again, stating "it keeps changing with their busy construction schedule coupled with when they are available in Florida."

67.     Then, months later, on September 28, 2017, Echt emailed Chihuly to inform it that "due to the hurricanes the installation (along with everything else!) has been again delayed. I am now on their calendar for October 29."

68.     Chihuly then learned that, despite Echt's claims regarding the repeated delays in installing the Amber Jade Herons artwork, the artwork had actually been installed in or about December 2016.

69.     On March 16, 2018, Chihuly emailed Echt requesting an update on when it could expect to receive the final payment of $30,863 from Echt and requesting photography of the final installation of the artwork for registration purposes.

70.     On July 19, 2018, Chihuly emailed Echt a final invoice for the balance due from Echt for the Amber Jade Herons artwork. A true and correct copy of the invoice is attached hereto as Exhibit L and incorporated herein by reference.

71.     To date, Defendants have not paid the final $30,863 owed to Chihuly under the Purchase Agreement.

**B.      2018 Rotolo and Editions Purchase**

72.     On December 15, 2017, Chihuly entered into a new Independent Referral Agreement with Echt Gallery, LLC[9] (the "2017 Referral Agreement"), which permitted Echt Gallery to act as a non-exclusive independent referral agent for the limited purpose of referring sales of Chihuly artwork to clients identified by Echt Gallery. A true and correct copy of the 2017 Referral Agreement is attached hereto as Exhibit M and incorporated herein by reference.

73.     Pursuant to the 2017 Referral Agreement, on or about January 9, 2018, Echt referred to Chihuly the sale of a Rotolo glass sculpture and four Studio Edition glass sculptures

---

[9] The parties incorrectly listed Echt Gallery, LLC in the 2017 Referral Agreement instead of EGC as the parties intended.

(the "Rotolo Purchase") for a total purchase price of $127,280. A true and correct copy of the January 9, 2018 sale order for the Rotolo Purchase is attached hereto as Exhibit N and incorporated herein by reference.

74.     On January 12, 2018, Chihuly sent an invoice to Echt Gallery in the total amount of $111,000 for the Rotolo Purchase, equal to the purchase price, plus tax, less Echt's commission. A true and correct copy of the January 12, 2018 invoice is attached hereto as Exhibit O and incorporated herein by reference.

75.     The invoice specified that payment was "Due Upon Receipt."

76.     On or about January 16, 2018, the client paid the full purchase price of $127,280 for the Rotolo Purchase to Echt Gallery by check dated January 16, 2018. A true and correct copy of the $127,280 check paid to Echt Gallery is attached hereto as Exhibit P and incorporated herein by reference.

77.     Echt concealed receipt of the $127,280 purchase price for the Rotolo Purchase from Chihuly.

78.     On February 2, 2018, Chihuly emailed Echt requesting an update on payment for the Rotolo Purchase.

79.     On February 6, 2018, Echt responded to Chihuly stating "Invoice/paperwork went out! I will keep you updated." Echt fraudulently concealed from Chihuly the fact that she had received the $127,280 payment from the client for the Rotolo Purchase more than two weeks earlier and was intentionally withholding payment to Chihuly.

80.     Because Echt intentionally concealed and fraudulent misrepresented to Chihuly that the client had not paid for the Rotolo Purchase, Chihuly did not ship the artwork to the client.

81.     Chihuly informed Echt that it would not release the artwork until they received payment.

82.     Despite Echt's knowledge that Chihuly would not ship the Rotolo Purchase until she paid Chihuly for the artwork, Echt made several intentional and fraudulent

-12-

misrepresentations to the client regarding the shipping and delivery status of the Rotolo Purchase.

83. On March 23, 2018, Echt texted the client that "[t]he Chihuly's will be shipped out next week" knowing that Chihuly had not agreed to ship the artwork the following week.

84. On March 28, 2018, Echt again texted the client "Confirmation, you are [on] the shipping schedule! Finally! Receive date Thursday, April 11" knowing that Chihuly had not agreed to ship the artwork for delivery on that date.

85. On April 11, 2018, Echt texted the client "letting you know your shipment has been received to warehouse and going out for delivery three day service-to be in Florida Monday" knowing that the artwork had not been shipped, received by a warehouse or scheduled for delivery the following Monday.

86. On Monday, April 16, 2018, Echt texted the client "[i]t is in transit, but due to weather conditions it's delayed" knowing that the artwork had not been shipped, was not in transit and delivery of the artwork had not been delayed by weather.

87. On Wednesday, April 18, 2018, Echt texted the client "[l]atest and greatest-because shipment so fragile and was delayed due to weather, it got flagged and now on schedule for, fingers crossed, Friday afternoon" knowing that the artwork had not been shipped by Chihuly, had not been delayed due to weather, and was not scheduled for delivery to the client by that Friday afternoon, April 20, 2018.

88. On Friday, April 20, 2018, Echt texted the client "[c]onfirmation, shipment will arrive with bells and whistles Tuesday 100%!" knowing that the artwork had not been shipped by Chihuly and was not scheduled to arrive by Tuesday, April 24, 2018.

89. On May 1, 2018, the client texted Echt back "Still no Chihuly."

90. On May 2, 2018, Echt emailed the client "[t]he shipment went back to Seattle-no one knows why? It will ship via new company which I will have for you later today. It will go out this week and you will FINALLY receive your stunning Chihuly's" knowing that there had

been no shipment of the artwork, it had not been returned to Seattle, and it was not scheduled to ship again with a new company that week.

91.     On May 2, 2018, the client contacted Chihuly directly to inquire about the status of the delivery the Rotolo Purchase, ordered and paid for by the client to Echt Gallery more than three months earlier, in January 2018.

92.     Upon communicating with the client, Chihuly realized, for the first time, that Echt had fraudulent concealed the $127,280 payment made by the client to Echt on January 16, 2018 for the Rotolo Purchase and had fraudulently misrepresented to the client that the artwork had been shipped by Chihuly when Echt knew that to be false.

93.     Echt's intentional and fraudulent misrepresentations to the client regarding the delivery of the Rotolo Purchase severely impaired Chihuly's reputation and business relationship with the client.

94.     Upon confirmation that the client had paid Echt Gallery the purchase price for the Rotolo Purchase, Chihuly immediately arranged for shipment of the artwork to the client, despite not receiving payment from Echt.

95.     Chihuly again demanded Echt remit the $111,000 owed to Chihuly.

96.     Echt refused to remit to Chihuly the $111,000 owed for the Rotolo Purchase.

97.     On May 5, 2018, Echt made a partial payment of $60,000 to Chihuly for the Rotolo Purchase.

98.     On May 10, 2018, Echt made another $10,000 payment to Chihuly for the Rotolo and Editions Purchase.

99.     Echt has still not paid the full balance of the $111,000 owed to Chihuly for the Rotolo Purchase.

**V.     Echt Gallery and Echt breach their payment obligations under the 2016 Notes.**

100.     EGC and Echt failed to make the required monthly payments totaling $2,500 under the 2016 Notes from at least June 20, 2018 through the present.

101.     On July 18, 2018, Chihuly sent a letter to EGC and Echt formally notifying them in writing, among other things, that they were in default of their obligations to make the June 20, 2018 payments due under the 2016 Notes and the $55,360 payment due for the Rotolo Purchase (the "Notice of Default").  A true and correct copy of the Notice of Default is attached hereto as Exhibit Q and incorporated herein by reference.

102.     In the Notice of Default, Chihuly provided EGC and Echt 30 days through August 18, 2018 to cure the defaults, and expressly reserved all rights under the 2016 Notes and 2016 Security Agreement.

103.     EGC and Echt failed to cure the defaults by August 18, 2018 or otherwise respond to the Notice of Default.

104.     Accordingly, Chihuly has been forced to file this action against Defendants seeking to collect all amounts due and owing to Chihuly under the 2016 Notes and the 2016 Security Agreement, and recover additional damages caused by Defendants' fraudulent and unlawful conduct.

### COUNT I
### Breach of Contract - Promissory Notes

105.     Chihuly incorporates and re-alleges each and every allegation in Paragraphs 1 through 104 as if fully set forth herein.

106.     The 2016 Notes are valid and enforceable contracts.

107.     Chihuly is the successor-in-interest to Chihuly Workshop.

108.     Chihuly and its predecessors-in-interest have fully performed under, and are not in breach of, each of the 2016 Notes.

109.     Defendants and Chihuly intended and understood that the 2016 Notes would each be made by and bind EGC, not the non-existent Echt Gallery, LLC.

110.     Echt and EGC failed to make the monthly payments required under Paragraph 1 of the 2016 Notes.

111. On July 18, 2018, Chihuly sent a Notice of Default to Defendants providing notice of, among other things, Echt and EGC's defaults under the 2016 Notes and providing 30 days to cure those defaults and Chihuly's intent to accelerate all amounts due, including attorneys' fees under the 2016 Notes if the defaults were not cured.

112. Defendants did not cure the payment defaults under the 2016 Notes within the 30-day cure period.

113. Accordingly, Chihuly has accelerated all amounts due under the 2016 Notes pursuant to Paragraph 6 of the 2016 Notes, which are now due and owing

114. Pursuant to Paragraph 7 of the 2016 Notes, Echt and EGC are obligated "to pay all costs incurred by Holder in collecting sums due under this Note after a default, including reasonable attorneys' fees."

115. Because Echt and EGC have failed to make required payments under the 2016 Notes and failed to cure their default within 30 days of written notice, Echt and EGC have each materially breached the 2016 Notes, and all payments, including interest accrued and all attorneys' fees and costs, are immediately due and payable.

116. Chihuly has been damaged by Echt's and EGC's material breaches in failing to pay the amounts due under the 2016 Notes because it has been denied the money it is owed under those notes.

117. Under Section 7 of the 2016 Notes, Chihuly is entitled to all attorneys' fees and costs incurred in enforcing the 2016 Notes.

## COUNT II
## Fraud (Amber Jade Herons)

118. Chihuly incorporates and re-alleges each and every allegation in Paragraphs 1 through 117 as if fully set forth herein.

119. As described above in Paragraphs 47 through 71, Echt made several intentional and fraudulent misrepresentations to Chihuly regarding the status of the installation of the Amber

Jade Herons artwork to avoid paying the final $30,863 required under Section 3.4 of the Purchase Agreement.

120.     Echt, on behalf of herself and as a representative of EG and EGC, knew her misrepresentations regarding the installation of the Amber Jade Herons were untrue and intended to induce Chihuly to rely on them to avoid payment of $30,863 required under Section 3.4. of the Purchase Agreement.

121.     Defendants' false representations were willful and wanton.

122.     Chihuly relied on Defendants' misrepresentation by delaying and forbearing its contractual right to demand immediate payment from Defendants of $30,863 under Section 3.4 of the Purchase Agreement.

123.     Chihuly has been damaged by its reliance on Defendants' misrepresentation in that it was denied the use of the $30,863 owed by Defendants under the Purchase Agreement, which it still has not received.

## COUNT III
## Fraud (Rotolo Purchase)

124.     Chihuly incorporates and re-alleges each and every allegation in Paragraphs 1 through 123 as if fully set forth herein.

125.     As described above in Paragraphs 72 through 99, Echt made several intentional and fraudulent misrepresentations to Chihuly and Chihuly's client regarding the sale, payment and delivery of the Rotolo Purchase.

126.     Beginning on or about January 16, 2018, Echt, on behalf of herself and EG and EGC, intentionally and fraudulently concealed from Chihuly Defendants' receipt of $127,280 purchase price from the client on January 16, 2018 for the Rotolo Purchase to avoid remitting the sale proceeds to Chihuly as required under the 2017 Referral Agreement.

127.     Beginning at least as early as March 23, 2018, Echt, on behalf of herself and EG and EGC, intentionally and fraudulently made several misrepresentations to Chihuly's client regarding the shipping and delivery status of the Rotolo Purchase.

-17-

128.    These misrepresentations were material because the receipt of the $127,280 purchase price by Defendants triggered Defendants' obligation to remit payment of $111,000 to Chihuly and triggered Chihuly's obligation to ship the Rotolo Purchase to its client.

129.    Echt, on behalf of herself and as a representative of EG and EGC, knew her misrepresentations regarding the payment for, and shipment and delivery of, the Rotolo Purchase were untrue and intended to induce Chihuly to rely on them by not immediately seeking the payments Defendants owed to Chihuly or ship the Rotolo Purchase to its client.

130.    Defendants' false representations were willful and wanton.

131.    Chihuly relied on the misrepresentation by not seeking immediate payment of $111,000 for the Rotolo Purchase from Defendants and by delaying delivery of the Rotolo Purchase to the client.

132.    Chihuly has been damaged by its reliance on Defendants' misrepresentation because it was denied the use of the $111,000 payment.

133.    Furthermore, Chihuly's reputation and relationship with its client were damaged by Defendants' misrepresentations because the client, thinking that the payment made to Defendants had been properly communicated and remitted to Chihuly, believed that Chihuly had failed to timely deliver the Rotolo Purchase.

**COUNT IV**
**Foreclosure of Liens and Security Interests**

134.    Chihuly incorporates and re-alleges each and every allegation in Paragraphs 1 through 133 as if fully set forth herein.

135.    The Security Agreement is a valid and enforceable contract and security agreement.

136.    Defendants and Chihuly intended and understood that the Security Agreement would bind and be entered into by EGC, not the non-existent Echt Gallery, LLC

137.    Pursuant to Section 2 of the Security Agreement, ECG granted Chihuly Workshop security interests in all of ECG's Personal Property, as defined in Section 1(a) and Exhibit A of

the Security Agreement, to secure Defendants' payment of all Obligations, as defined in Section 1(c) of the Security Agreement.

138.     Chihuly is the successor to Chihuly Workshop and thus is empowered to exercise all rights and remedies, including foreclosure, granted to Chihuly Workshop under Section 9 of the Security Agreement.

139.     The liens and security interests in the Personal Property that Chihuly holds are prior and superior to the right, title, interest, claim or lien of all other parties.

140.     Under Section 8 of the Security Agreement, an Event of Default includes, among other things, "(a) a failure to pay any amount due under the Note or this Agreement within ten (10) days of the date the same is due; (b) the failure by [EGC] to perform any of the other obligations under this Agreement within thirty (30) days of notice from [Chihuly] of the same; (c) falsity, inaccuracy or material breach by [EGC] of any written warranty, representation or statement made or furnished to [Chihuly] by or on behalf of [EGC]."

141.     As set forth above, Defendants have triggered a default under the Security Agreement by, among other things, failing to pay the amounts due and owing under the 2016 Notes, failing to pay $30,863 due under Section 3.4 of the Purchase Agreement for the Amber Jade Herons installation and failing to remit $111,000 owed to Chihuly for the Rotolo Purchase.

142.     Because Defendants are in default on multiple obligations secured by the Security Agreement, including but not limited to under the 2016 Notes, Purchase Agreement, and 2017 Referral Agreement, Chihuly is entitled to foreclose on its liens and security interests in EGC's Personal Property.

143.     Pursuant to Sections 1(c) and 9 of the Security Agreement, Chihuly is entitled to recover its expenses of retaking and foreclosing on the Personal Property, including attorneys' fees and costs.

## COUNT V
## Unjust Enrichment

144.     Chihuly incorporates and re-alleges each and every allegation in Paragraphs 1 through 117 as if fully set forth herein.

145.     In the alternative, if the contracts detailed above are not found to control the relationship between Chihuly and Defendants, Defendants have been unjustly enriched by improperly retaining money from the sales of Chihuly artwork Defendants did not own.

146.     Defendants have received and retained money from customers for the sale of Chihuly artwork, including but not limited to the sale and installation of the Amber Jade Herons artwork and Rotolo Purchase.

147.     Defendants' retention of unearned proceeds from the sale of Chihuly artwork violates the fundamental principles of justice, equity, and good conscience.

## COUNT VI
## Copyright Infringement
### (17 U.S.C. §§ 106 and 501)

148.     Chihuly incorporates and re-alleges each and every allegation in Paragraphs 1 through 147 as if fully set forth herein.

149.     Chihuly is the creator and copyright holder of, among other things, sculptures, other artwork, and professional photographs of Chihuly artwork (the "Copyrighted Work").

150.     Chihuly protected the Copyrighted Work through, among other things, its agreements with Defendants.

151.     Section 3.2 of the 2017 Referral Agreement prohibited EGC from producing or distributing any advertising, marketing or promotional materials referencing or displaying Chihuly artwork through any medium without Chihuly's advanced written approval.

152.     Section 4 of the 2017 Referral Agreement expressly protected all Chihuly intellectual property rights, including rights to all the Copyrighted Work.

153.     Section 7.1 of the Purchase Agreement expressly protected all Chihuly intellectual property rights, including rights to all Copyrighted Work.

-20-

154.    Section 7.2 of the Purchase Agreement specifically prohibited EGC from making any commercial use, including through advertising, of Chihuly artwork or imagery of Chihuly artwork.

155.    Despite these restrictions, Defendants have infringed Chihuly's copyright by posting Chihuly's Copyrighted Work to the Echt Galley Facebook page for advertising and promotional purposes without the advanced written consent of Chihuly.  A true and correct copy of the Echt Gallery Facebook homepage as of September 11, 2018 showing the Copyrighted Work is attached hereto as Exhibit R.

156.    By reproducing and publicly displaying Chihuly's Copyrighted Work to advertise and promote Echt Gallery without Chihuly's advanced written consent, Defendants have infringed Chihuly's copyrights in the Copyrighted Work.

157.    Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to Chihuly's rights.

158.    As a direct and proximate result of said infringement by Defendants, Chihuly is entitled to damages in an amount to be proven at trial.

159.    Chihuly is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

## COUNT VII
## Alter-Ego/Piercing the Corporate Veil

160.    Chihuly incorporates and re-alleges each and every allegation in Paragraphs 1 through 159 as if fully set forth herein.

161.    Upon information and belief, Echt exercised complete control and domination of the finances, policy, and business practices of EG and EGC to such an extent that they had no meaningful separate existence from her.

162.    Upon information and belief, EG and EGC are inadequately capitalized, fail to observe corporate formalities, and operate as a mere façade for Echt's personal business.

163.    Upon information and belief, Echt has siphoned funds from EG and EGC for her own personal uses and expenses, including the $30,863 owed under the Purchase Agreement, the $111,000 owed for the Rotolo Purchase and the more than $200,000 owed under the 2016 Notes.

164.    Upon information and belief, EG and EGC were organized and carried on business without substantial capital in such a way that they were likely to have no sufficient assets available to meet their debts.

165.    Upon information and belief, Defendants comingled their funds and failed to maintain separate accounts.

166.    As a result, the corporate form of EG and EGC should be disregarded, and Defendants should be jointly and severally liable for the obligations and debts described above.

## PRAYER FOR RELIEF

WHEREFORE, Chihuly prays for relief as follows:

1.    Award judgment for Chihuly on all claims for relief asserted in the Complaint;

2.    Award Chihuly damages in an amount to be proven at trial;

3.    Award Chihuly punitive and/or exemplary damages in an amount to be determined at trial;

4.    Award Chihuly pre-judgment and post-judgment interest;

5.    Award Chihuly its attorneys' fees and expenses of litigation;

6.    Award Chihuly a judgment of foreclosure and sale of the Personal Property, including the following provisions:

   **a.**    a declaration that Chihuly's interest in the Personal Property to be foreclosed is superior to all other interests claimed in the Personal Property;

   **b.**    a declaration that the Personal Property may be sold by Chihuly in accordance with Section 9-604(a) of the Illinois Uniform Commercial Code;

   **c.**    a declaration that the sale of Personal Property may be conducted to satisfy the amount due to Chihuly as set forth in the judgment, together with the interest thereon at the statutory judgment rate from the date of the judgment; and

   **d.**    a declaration that in the event Chihuly is a purchaser of the Personal

Property at such sale, Chihuly or its designee may offset against the purchase price of such Personal Property the amounts due under the judgment of foreclosure and order confirming the sale;

7.  Issue an order granting possession of the Personal Property to the purchaser at a foreclosure sale;

8.  Issue an order using the Court's equitable power to reform the 2013 Security Agreement, First 2016 Note, Second 2016 Note, Third 2016 Note, 2016 Security Agreement, 2016 Referral Agreement, Purchase and Installation Agreement, and 2017 Referral Agreement so that all references to "Echt Gallery, LLC," "Echt Gallery, an Illinois limited liability company," and "Echt Gallery" are replaced by "Echt Gallery Chicago, LLC" to correctly reflect the agreements actually reached by the parties;

9.  Assess all costs against Defendants; and

10.  Grant such other relief as the Court deems just and proper.

Dated: September 18, 2018

Respectfully Submitted,

**CHIHULY, INC.**

/s/ Keith G. Klein
By one of its Attorneys

Eric E. Walker (ARDC # 6290993)
Keith G. Klein (ARDC # 6313251)
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone:  (312) 324-8400
Facsimile:  (312) 324-9400
Email:  ewalker@perkinscoie.com
        kklein@perkinscoie.com

**ATTORNEYS FOR PLAINTIFF**